Filed 8/12/21  P. v. Sanchez CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>RAFAEL SANCHEZ,<br><br>　　　Defendant and Appellant. | B304292<br><br>(Los Angeles County<br>Super. Ct. No. KA117570) |

　　　APPEAL from a judgment of the Los Angeles Superior Court, Mike Camacho, Judge.  Affirmed.

　　　Spolin Law and Aaron Spolin for Defendant and Appellant.

　　　Matthew Rodriguez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan

Pithey, Assistant Attorney General, Steven D. Matthews and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Rafael Sanchez (defendant) stabbed his supervisor at a Domino's Pizza in the neck because the supervisor asked defendant to do his job. A jury convicted defendant of first degree murder. Defendant argues that there was insufficient evidence that he acted with premeditation and deliberation, and that the trial court erred in admitting some of the prosecution's rebuttal evidence. These arguments do not warrant reversal, so we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

On a rainy Saturday night in March 2018, defendant and Daniel Sanchez (Daniel) were both working at the Domino's Pizza in La Puente, California.[1] Daniel was an assistant manager; defendant, a delivery driver.

For a time prior to that night, defendant had harbored a dislike of Daniel. Defendant thought Daniel was "disrespectful" to him, gave him "attitude," and had been "picking at [him]" and "pushing [his] buttons." Defendant's animosity toward Daniel had been "building up . . . for some time."

That night, Daniel told defendant to go out on his next delivery run while the two stood in the tiny shop's kitchen area. Defendant ignored him. Daniel told him again. Defendant ignored him again. Daniel told him a third time, raising his voice

---

[1]     Defendant and his victim share the same last name, but are unrelated. To avoid confusion, we use the victim's first name. We mean no disrespect.

slightly to be heard over the "very loud" pizza ovens. The other assistant manager and manager echoed Daniel in telling defendant to deliver the next round of pizzas.

After all those requests, defendant made it appear as though he was leaving to deliver pizzas—he grabbed the order receipts that he was to hand the customers as well as the pizza boxes from the delivery shelf.

But defendant did not actually leave.

Instead, defendant pulled a folding knife with a Marine Corps insignia on the handle and a three- or four-inch blade from his pocket, unfolded the knife with both hands, placed it in his balled up fist, walked up behind Daniel (who had turned back toward the pizza assembly line), and proceeded to stab Daniel four times: He plunged the knife into Daniel's back and chest cavity (collapsing his lung), stabbed Daniel twice in the arm, and buried the knife in Daniel's neck (severing his carotid artery). Daniel's blood started pumping out of the neck wound, all over the kitchen, his coworkers, the counter and the floor.

Daniel turned to face defendant, punched him in the face, and the two wrestled onto the floor.

Daniel managed to stand up while trying to stanch the bleeding in his neck with his hand, but he ultimately crumpled to the floor.

The other workers in the kitchen prevented defendant from scooting away toward the back door. Defendant first told the manager that he did not do anything, and then boasted, "[T]hat's what you get because you guys don't listen to me. I tell you many times don't bother me."

## II.    Procedural Background

The People charged defendant with first degree murder (Pen. Code, § 187), and alleged that defendant personally used a dangerous and deadly weapon (namely, the knife) (§ 12022, subd. (b)(1)).

Defendant called a psychologist who opined that defendant suffered from posttraumatic stress disorder (PTSD).  The psychologist explained the PTSD causes a person to be hyperaroused, hypervigilant, and hyperaware, and that defendant accordingly viewed Daniels's repeated entreaties for defendant to deliver pizzas as an assault that warranted the use of lethal force.  The psychologist's diagnosis was based solely on defendant's reporting of the diagnostic elements of PTSD, as the psychologist did nothing to verify the truth of anything defendant told her.  The psychologist admitted that the diagnostic elements of PTSD are widely available on the internet and that a person could tailor the symptoms he reports to match those elements, but went on to say that she had no reason to believe *defendant* was malingering.

In rebuttal, the People offered two pieces of evidence.  First, the People introduced defendant's statement to police hours after his arrest that he "think[s] [he] might have PTSD," because he had faced "a lot of bullying" in his past as well as "people . . . trying to get [him] mad," and because he "snapped" when Daniel told him to deliver pizzas and thereafter "blacked out."  Second, the People introduced evidence that (1) defendant was pulled over by law enforcement in May 2017 while in lawful possession of (a) two knives with insignia on the handles, (b) a police-style duty belt with handcuffs and pepper spray, police-style gloves and boots, and a police-style badge that defendant used for the

4

security guard job he held at that time, and (c) a Los Angeles Police Department "challenge coin," and (2) defendant told the police who stopped him that in January 2017 he had flashed his security guard badge at someone in a way that "might have led [] [that person] . . . to believe that he was [a] police [officer]."

The trial court instructed the jury on the crimes of murder as well as voluntary manslaughter based on provocation, and also instructed the jury that mental diseases or defects could negate the specific intent necessary for a conviction of first degree murder.

The jury convicted defendant of first degree murder, making an express finding that he acted with premeditation and deliberation. The jury also found true the allegation that he personally used the knife.

The trial court sentenced defendant to prison for 26 years to life comprised of a sentence of 25 years to life for the first degree murder plus one year for the weapon enhancement.

Defendant filed this timely appeal.

## DISCUSSION

In this appeal, defendant argues that (1) his first degree murder conviction must be reduced to second degree murder because there was insufficient evidence that he acted with premeditation and deliberation, and (2) his murder conviction must be vacated entirely because the trial court erred in admitting the People's rebuttal evidence.

## I.    Insufficient Evidence of Premeditation and Deliberation

Defendant argues that he is entitled to a reduction of his murder conviction from first degree to second degree because there is insufficient evidence of the one element that

5

distinguishes them—namely, that he killed Daniel with premeditation and deliberation (rather than as a "'result of mere unconsidered or rash impulse hastily executed'"). (§ 189; *People v. Brooks* (2017) 3 Cal.5th 1, 58 (*Brooks*), quoting *People v. Thomas* (1945) 25 Cal.2d 880, 900-901; *People v. Gomez* (2018) 6 Cal.5th 243, 282; *People v. Nelson* (2011) 51 Cal.4th 198, 213 (*Nelson*).)

"Premeditation" means "'thought over in advance'" (*People v. Sandoval* (2015) 62 Cal.4th 394, 424), and "deliberation" means a ""'careful weighing of considerations in forming a course of action'"" (*People v. Salazar* (2016) 63 Cal.4th 214, 245 (*Salazar*)). "'The process of premeditation and deliberation does not require any extended period of time'"; what matters is the "extent of the reflection, not the length of time." (*Salazar*, at p. 245; *Nelson*, *supra*, 51 Cal.4th at p. 213 ["Thoughts may follow each other with great rapidity, and cold, calculated judgment may be arrived at quickly."].) In evaluating whether a defendant has committed a murder with premeditation and deliberation, courts look to— but are not limited to—three factors: (1) whether the defendant had a prior motive to kill the victim; (2) whether the defendant in any way planned the killing; and (3) whether the defendant's manner of killing evinced a design to kill. (*People v. Morales* (2020) 10 Cal.5th 76, 88-89 (*Morales*), citing *People v. Anderson* (1968) 70 Cal.2d 15, 26-27; *Brooks*, *supra*, 3 Cal.5th at p. 59.)

In assessing whether there is sufficient evidence to support a jury's finding that a defendant acted with premeditation and deliberation, our task is merely to ask whether the record "discloses . . . evidence that is . . . reasonable, credible, and of solid value" from which "*any* rational trier of fact" could make that finding beyond a reasonable doubt. (*People v. Rivera* (2019)

7 Cal.5th 306, 323; *People v. Perez* (1992) 2 Cal.4th 1117, 1127 (*Perez*); *Salazar*, *supra*, 63 Cal.4th at p. 242.) In undertaking this inquiry, we view the record in the light most favorable to the jury's finding by deferring to the jury's credibility determinations, drawing all reasonable inferences in support of the finding, and resolving all evidentiary conflicts in favor of the finding. (*Salazar*, at p. 242; *People v. Maury* (2003) 30 Cal.4th 342, 396, 403.)

Substantial evidence supports the jury's finding of premeditation and deliberation in this case, as all three factors relevant to this finding are present. (*People v. Steele* (2002) 27 Cal.4th 1230, 1250 [where "all three categories of evidence exist," substantial evidence exists].) There is substantial evidence of motive. Defendant felt that Daniel had been "disrespect[ing]" him, "picking at [him]" and "pushing [his] buttons," and that this strife had been "building up . . . for some time." A "[d]efendant's pent-up resentment toward his victim establishes the prior relationship from which [a] jury reasonably could infer a motive for the killing[]." (*People v. Cruz* (1980) 26 Cal.3d 233, 245.) There is substantial evidence of planning. Defendant brought a knife to work, faked his departure from the busy kitchen, took the time to unfold his knife, and then approached Daniel from behind. This planning enabled defendant to have a weapon at the ready and to have the element of surprise. (*People v. Lee* (2011) 51 Cal.4th 620, 626 (bringing a "loaded handgun . . . indicat[es]" that a defendant was "consider[ing] the possibility of a violent encounter"]; *People v. Potts* (2019) 6 Cal.5th 1012, 1027-1028 [bringing hatchet to scene "suggests that the murder[] w[as] planned"]; see also *People v. San Nicolas* (2004) 34 Cal.4th 614, 658 [brief period between when defendant saw victim's reflection

in mirror before turning around and stabbing her was adequate for deliberation and premeditation].) And there is substantial evidence that the manner of killing was part of a calculated design to kill insofar as defendant stabbed Daniel in two vital areas—the chest cavity and the neck. (*Perez*, *supra*, 2 Cal.4th at p. 1127 [violent and bloody death from multiple stab wounds can demonstrate premeditation]; *People v. Booker* (2011) 51 Cal.4th 141, 152, 173 [multiple stab and cut wounds to the neck that severed the right carotid artery and jugular vein indicated victim was killed deliberately]; *Morales*, *supra*, 10 Cal.5th at p. 91 [same]; *People v. Bolden* (2002) 29 Cal.4th 515, 561 [stab in the back of an "unsuspecting" victim evidence of intent to kill].)

Defendant resists this conclusion with two categories of arguments.

First, he urges us to evaluate the pertinent factors differently. He argues that there was insufficient evidence of motive because what he perceived as Daniel's "antagonizing him" was not a motive to kill Daniel because it occurred only "on the night of the shooting." This argument ignores defendant's postarrest statements to the police that the tension between Daniel and himself had been "building . . . for some time." He argues that there was insufficient evidence of planning because (1) there was no plan, as he always carries a knife and just exploded irrationally at the pizza parlor, and (2) any plan he formulated was not a very good plan because he ended up killing Daniel in front of multiple witnesses and without a cogent getaway plan. This argument ignores that premeditation and deliberation do not always require "strong evidence of planning" (*People v. Williams* (2018) 23 Cal.App.5th 396, 411), that the evidence supports a finding of *some* planning, and that the fact

8

that defendant was a *poor* planner does not mean he was not planning at all.  Defendant also argues that there was insufficient evidence of a manner of killing because "a brutal manner of killing is as consistent with a sudden, random 'explosion' of violence as with calculated murder."  (*People v. Alcala* (1984) 36 Cal.3d 604, 626, superseded on other grounds by Evid. Code, § 1108.)  This argument stands for the unremarkable proposition that the manner of killing *alone* cannot support a finding of premeditation and deliberation, but ignores that there was ample evidence of motive and planning over and above the brutal nature of defendant's attack on Daniel.  At bottom, defendant is inviting us to reweigh the evidence and to come to a conclusion more to his liking.  This is an invitation we must decline.  (*In re Caden C.* (2021) 11 Cal.5th 614, 640 ["In reviewing factual determinations for substantial evidence, a reviewing court should 'not reweigh the evidence . . .'"]; *People v. Alexander* (2010) 49 Cal.4th 846, 883 [same].)

Second, defendant likens this case to *People v. Boatman* (2013) 221 Cal.App.4th 1253 (*Boatman*).  The analogy does not hold.  *Boatman* held that there was insufficient evidence of premeditation and deliberation in a case where there was "little or no . . . motive evidence," no "planning evidence," and the defendant urged onlookers to call 911 after he shot the victim in the face.  (*Id.* at pp. 1265-1269.)  As outlined above, the evidence in this case is markedly different.

## II.     Evidentiary Issues

Defendant argues that the trial court erred in admitting the evidence that he possessed the insignia knives and other law enforcement paraphernalia in May 2017 and that he admitted to flashing his security guard badge once in January 2017.  The

9

court ruled that the insignia knives were relevant to prove defendant's identity as the perpetrator because they were the "same style of knife that was used in the incident," although the court admitted that identity was "not . . . a major issue in the case" in light of the defense presented at trial. The court did not specifically address the admissibility of the other law enforcement paraphernalia or the January 2017 flashing-a-badge incident. Defendant's sole objection was on "402 grounds"; he did not object under Evidence Code section 352, did not request a limiting instruction, and did not ask the court to specifically rule on the law enforcement paraphernalia or the January 2017 incident. Although defendant ostensibly forfeited most of his evidentiary claims on appeal by not objecting on the specific basis alleged on appeal and not requesting a limiting instruction (Evid. Code, §§ 353, 355), we exercise our discretion to reach the merits of his claims. We review claims of evidentiary error for an abuse of discretion. (*People v. Mora and Rangel* (2018) 5 Cal.5th 442, 502.)

It is a close question whether the trial court abused its discretion in admitting evidence that (1) defendant possessed knives in May 2017 similar in design to the knife he used to kill Daniel, (2) defendant possessed police-related paraphernalia in May 2017, and (3) defendant flashed his security guard badge at someone in January 2017. This evidence is comprised wholly of uncharged conduct by defendant potentially admissible under Evidence Code section 1101, subdivision (b). To be admissible as so-called "1101(b) evidence," a trial court must find that (1) the purpose for which the uncharged acts are offered is relevant to the pending case (*People v. Daniels* (1991) 52 Cal.3d 815, 857-858), (2) the uncharged acts are sufficiently similar to the

10

charged crime that the evidence has a tendency to prove the purpose for which it is offered (*People v. Lindberg* (2008) 45 Cal.4th 1, 22 (*Lindberg*); *People v. Ewoldt* (1994) 7 Cal.4th 380, 402-403, superseded on other grounds by Evid. Code, § 1108), and (3) the probative value of the evidence is not substantially outweighed by the "substantial danger of undue prejudice, of confusing the issues, or of misleading the jury" (Evid. Code, § 352; *Lindberg,* at pp. 22-23).  On the one hand, all of this evidence has little or no probative value.  Defendant's prior possession of knives similar to the knife used in the charged crime is relevant to prove defendant's identity as the killer in this case, but defendant did not dispute his identity as the killer and instead offered a mental illness defense.  Defendant's possession of other police-related paraphernalia he used in his job as a security guard and his act in flashing his then-valid badge does not seem relevant at all.  On the other hand, this evidence has so little relevance that it does not pose a substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.  Indeed, the prosecutor mentioned the police-style paraphernalia only once in closing argument, and only to note that the psychologist "didn't . . . want to hear about" it.  Whether defendant possessed several items he needed to perform the job he had many months before he committed the charged murder does not say much about whether he stabbed Daniel or the mental state with which he did it.

We need not definitely decide whether the trial court abused its discretion, because the admission of this evidence was in any event not prejudicial.  (*People v. Richardson* (2008) 43 Cal.4th 959, 1001 (*Richardson*).)  Admission of evidence is prejudicial only if "'it is reasonably probable that a result more

11

favorable to the appealing party would have been reached in the absence of the error.'" (*Id.*, quoting *People v. Watson* (1956) 46 Cal.2d 818, 836.) Because we are assuming an error in applying the Evidence Code to particular items of evidence and not an error of constitutional dimension, we reject defendant's entreaty that we must instead ask whether the error was harmless beyond a reasonable doubt. (*People v. Boyette* (2002) 29 Cal.4th 381, 427-428 [so holding]; *People v. Bacon* (2010) 50 Cal.4th 1082, 1104, fn. 4.) It is not reasonably probable the jury would have reached a different result had the trial court excluded evidence of the other knives, the police paraphernalia and defendant's act of flashing his security guard badge. That is because the evidence of defendant's identity and his state of mind was overwhelming, and because the evidence we are assuming was improperly admitted all involved lawful conduct and was so tangential to any disputed issue at trial that it could not have possibly affected any juror's calculus.

Defendant offers two arguments in response. First, he asserts that the jury inevitably treated this evidence as evidence of his propensity for criminal behavior, and specifically, his propensity to murder Daniel. While evidence of criminal propensity is generally inadmissible (Evid. Code, § 1101, subd. (a)), defendant's propensity-based argument ignores that (1) all of the other act evidence involved *lawful* conduct, and thus could not have supported an inference of *criminal* propensity, and (2) defendant's state of mind while stabbing Daniel was the only contested issue at trial, and the other act evidence says nothing about what state of mind he might have harbored nearly a year later while stabbing a coworker to death. Second, defendant contends that his impersonation of a police officer in January

12

2017 has no bearing on his knowledge of military gear, and hence is not relevant to show the *reason* he was aware of PSTD as a possible defense. This argument ignores that (1) the evidence did not indicate that defendant impersonated a police officer, but rather that he flashed his legitimately possessed badge at an unknown third party for an unknown purpose and that the person may have perceived defendant was a peace officer, and (2) what was most relevant was defendant's preexisting familiarity with PTSD, not the *reason* for that familiarity, and, as noted above, the "impersonation" is so unrelated to the charged crime that it was not prejudicial.

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT


We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ


13